## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ERNESTO DANIEL ORTUNO HERNANDEZ,  Movant, | :: :: :: | MOTION TO VACATE 28 U.S.C. § 2255 |
| v. | :: :: | CRIMINAL NO. 1:18-CR-0441-WMR-RGV-3 |
| UNITED STATES OF AMERICA,  Respondent. | :: :: :: :: | CIVIL ACTION NO. 1:20-CV-4665-WMR-RGV |

### FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of Ernesto Daniel Ortuno Hernandez's ("Ortuno's") pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 164], and the government's response, [Doc. 169]. For the reasons that follow, it is **RECOMMENDED** that Ortuno's § 2255 motion be **DENIED**.

### I. PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia returned a four-count indictment against Ortuno and four co-defendants, charging Ortuno in Count One with conspiring to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846; in Count Three with possessing with intent to distribute at least five kilograms of cocaine, in violation of §§ 841(a)

and (b)(1)(A) and 18 U.S.C. § 2; and in Count Four with possession of a firearm in furtherance of the drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). [Doc. 12]. Represented by Richard Holcomb ("Holcomb") of the Federal Defender Program, Inc., Ortuno pled guilty to Counts One and Three, pursuant to a negotiated plea agreement in which the government agreed to dismiss Count Four with the proviso that "the Court may still consider the conduct underlying [the] dismissed count[] in determining relevant conduct under the Sentencing Guidelines and a reasonable sentence." [Doc. 113-2 at 1, 5]. Additionally, the parties agreed that Ortuno would "receive the 2-level upward adjustment pursuant to [U.S.S.G. §] 2D1.1(b)(1) because a dangerous weapon was possessed." [Id. at 7]. Ortuno signed the plea agreement and a separate certification section, which stated, in relevant part:

> I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. . . No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement. . . I am fully satisfied with the representation provided to me by my attorney in this case.

[Id. at 16-17].

At the plea hearing, Ortuno was placed under oath and confirmed that he had reviewed the plea agreement with his attorney, understood it, and signed it. [Doc.

2

166 at 5-6]. Ortuno also affirmed that that he understood the rights he was giving up by pleading guilty and that he wished to do so. [Id. at 9-12]. The government then summarized the negotiated plea agreement, including the parties' agreement that Ortuno "should receive a two-level upward adjustment, pursuant to Section 2D1.1(b)(1), because a dangerous weapon was possessed in furtherance of the conspiracy." [Id. at 12-18]. Ortuno understood and agreed with the government's description of the plea agreement. [Id. at 18]. Ortuno also understood that the Court was not bound by the parties' sentencing recommendations, that he faced a Guidelines' sentence "in excess of ten years in prison," and that he could not withdraw his plea if his sentence was more than he expected or if the Court did not accept the parties' sentencing recommendations. [Id. at 18, 28]. Ortuno then confirmed that no one had promised him a specific sentence or anything other than what was contained in the plea agreement and that no one had threatened or forced him to plead guilty. [Id. at 19]. Holcomb also affirmed that he had not promised Ortuno "a particular sentence in the event of a plea of guilty." [Id. at 19-20]. Ortuno acknowledged that he had enough time to talk to Holcomb before entering his guilty plea and was satisfied with Holcomb's representation. [Id. at 20].

Next, the government stated the elements of Counts One and Three, and Ortuno confirmed that he understood. [Id. at 20-22]. The government then

3

summarized the factual basis for Ortuno's plea, which was included in the plea agreement, as follows: (1) agents of the Drug Enforcement Admistration intercepted communications among Ortuno and co-defendants Alfredo Solorio and Miguel Roque Ochoa regarding the arrival of a drug load in Atlanta, Georgia; (2) on June 26, 2018, agents established surveillance at Ortuno's apartment and saw him place a duffel bag in the bed of his truck and depart the location; (3) shortly thereafter, Sandy Springs police performed a traffic stop on the truck, and, after a K-9 alerted to the presence of drugs, officers found and seized three kilograms of cocaine from the duffle bag; (4) during a post-arrest interview, Ortuno admitted that the duffle bag contained cocaine, that the drugs came from his apartment, and that additional drugs and a gun could be found there; (5) Ortuno consented to a search of his apartment and a vehicle parked there; and (6) agents searched the apartment and vehicle and found an additional forty kilograms of cocaine and an American Tactical M-1911 .45-caliber handgun. [Id. at 22-23; Doc. 113-2 at 5-6]. Ortuno agreed with the government's description of the facts. [Doc. 166 at 23].

Ortuno understood that he faced a possible maximum sentence of life imprisonment and a mandatory minimum sentence of ten years of imprisonment. [Id. at 24-25]. Ortuno affirmed that he and his attorney had discussed the United States Sentencing Guidelines and how they might apply to his case and that he

4

understood that it was not possible to determine his exact Guidelines range at this stage of the proceedings and that the Court could impose a sentence outside of that range. [Id. at 25-26]. The Court accepted Ortuno's guilty plea after finding that he was competent to understand the proceedings and that his decision to plead guilty was free of coercive influence of any kind and made with full knowledge of the charges against him and the consequences of the plea. [Id. at 29-30].

At sentencing, the Court determined that Ortuno's final adjusted Guidelines range was 97 to 121 months of imprisonment and imposed the mandatory minimum sentence of 120 months of imprisonment. [Doc. 167 at 18; Doc. 131]. The Court granted Holcomb's request to recommend that Ortuno be considered for inclusion in the Residential Drug Abuse Program ("RDAP"). [Doc. 167 at 22]. Ortuno did not file a direct appeal.

Ortuno timely filed this pro se § 2255 motion, arguing that Holcomb was ineffective by: (1) coercing him to plead guilty by misleading him to believe that he would be eligible for a one-year sentence reduction if he successfully completed the RDAP, even though Holcomb knew that the § 2D1.1(b)(1) firearm enhancement would prevent him from receiving that sentence reduction; and (2) failing to object to the § 2D1.1(b)(1) firearm enhancement at sentencing. [Doc.

5

164 at 4-5, 10-11]. The government responds that Ortuno has failed to show deficient performance by counsel or prejudice. [Doc. 169 at 7-17].

## II. DISCUSSION

A.  **Legal Standards**

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record before the Court, the undersigned finds that an evidentiary hearing is not required in this case. See Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). The analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one." Id. at 697. A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him. In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted). Counsel is required to provide defendant sufficient information to make an informed and knowing decision to plead guilty, including "all of the information counsel had (and reasonably should

7

have had)" and must offer defendant "reasonable advice" based on that information. Davidson v. United States, 138 F. App'x 238, 240 (11th Cir. 2005) (per curiam). Ortuno has the burden of affirmatively proving prejudice. Gilreath v . Head, 234 F.3d 547, 551 (11th Cir. 2000). Additionally,

> the representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

**B.     Ground One: Counsel's Advice Regarding Plea**

Ortuno's claim that Holcomb led him to believe that he would receive a one-year sentence reduction if he completed the RDAP is belied by the record. Ortuno acknowledged that he had signed the plea agreement and separate certification section, which provided that no one had threatened or forced him to plead guilty or made any promises or inducements other than those discussed in the agreement and that he was fully satisfied with Holcomb's representation. [Doc. 113-2 at 17; Doc. 166 at 5-6]. Additionally, Ortuno affirmed at the plea hearing that **no one had promised him a specific sentence** or anything other than what was contained in

8

the plea agreement, that no one had threatened or forced him to plead guilty, and that he had enough time to talk to Holcomb before entering his guilty plea and was satisfied with Holcomb's representation. [Doc. 166 at 19-20]. Ortuno also confirmed his understanding that the Court was not bound by the parties' sentencing recommendations, that he faced a guideline's sentence "in excess of ten years in prison," and that he could not withdraw his plea if his sentence was more than he expected or if the Court did not accept the parties' sentencing recommendations. [Id. at 18, 28].

Ortuno has not met his "heavy burden" to show that the statements he made during his plea colloquy were false, and his after-the-fact assertion that Holcomb led him to believe that he would receive a one-year sentence reduction is insufficient to rebut the presumption that those statements were true and correct.[1] Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam). See also United States v. Cardenas, 230 F. App'x 933, 935 (11th Cir. 2007) (holding that defendant did not overcome the presumption that "his sworn statements made

---

[1] In support of this claim, Ortuno has attached a letter from Holcomb dated November 14, 2019. [Doc. 164 at 12]. Because this letter was written two days after Ortuno's sentencing, it could not have coerced his guilty plea, and in any event, Ortuno's claims of coercion are refuted by the record for the reasons discussed.

9

during the plea colloquy-including that no one had predicted what sentence he would receive-were" true simply because he claimed his counsel promised "him that he would receive a sentence shorter than the sentence ultimately imposed by the district court"). Therefore, Ortuno has not shown deficient performance by counsel.

Ortuno also has failed to prove prejudice because he has not alleged that, but for counsel's allegedly misleading advice, he would not have pled guilty and would have insisted on going to trial. By pleading guilty, Ortuno received a significantly lower sentence than he faced had he gone to trial. Pursuant to the plea agreement, [Doc. 113-2 at 5], the government dismissed Count Four, possession of a firearm in furtherance of the drug trafficking crime, which would have required a five-year consecutive sentence, [Doc. 167 at 6]. See 18 U.S.C. § 924(c)(1)(A)(i). The government also stipulated to a particular drug amount and base offense level, [Doc. 113-2 at 7], which otherwise would have been higher, [Doc. 167 at 6-7], and agreed to recommend a reduction for acceptance of responsibility and a sentence at the low end of the guidelines range, [Doc. 113-2 at 7, 9]. The government's evidence against Ortuno, as summarized in the plea agreement and at the plea hearing, was substantial. [Doc. 113-2 at 5-6; Doc. 166 at 22-23]. Ortuno has not shown that a decision to reject the plea agreement would have been rational under these

circumstances.  See Padilla v. Kentucky, 559 U.S. 356, 372 (2010) ("[P]etitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").  Accordingly, Ortuno is not entitled to relief on ground one.

C. **Ground Two: Counsel's Failure to Challenge Firearm Enhancement**

Ortuno has not shown that Holcomb's failure to challenge the firearm enhancement at sentencing was unreasonable.  The § 2D1.1(b)(1) enhancement "should be applied if the weapon was present, *unless* it is clearly improbable that the weapon was connected with the offense."  United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995) (per curiam) (quoting U.S.S.G. § 2D1.1, comment. (n.3)).  "Once the prosecution has shown by a preponderance of the evidence that the firearm was present at the site of the charged conduct, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable."  Id.

After his arrest, Ortuno consented to a search of his apartment and a vehicle at that location and admitted that the drugs officers found in a duffle bag in his vehicle during a traffic stop came from his apartment and that additional drugs and a firearm were also present at his apartment.  [Doc. 113-2 at 6; Doc. 166 at 23].  Upon searching the apartment and vehicle, agents found an additional forty

11

kilograms of cocaine and an American Tactical M-1911 .45-caliber handgun. [Id.]. The firearm enhancement was properly applied under these facts. See United States v. Hunter, 172 F.3d 1307, 1308-10 (11th Cir. 1999) (holding that the § 2D1.1(b)(1) firearm enhancement was properly applied to defendant who was arrested in his vehicle in possession of drugs, where firearms and drug paraphernalia were found 100 miles away in his apartment). Ortuno's claim that the handgun found in his apartment was "duly registered" to him and "was not actively used" during his crime, see [Doc. 164 at 11], does not "suggest that a connection between the handgun and the [cocaine] was clearly improbable," Hall, 46 F.3d at 64. Therefore, Holcomb's failure to raise this meritless objection was reasonable, and Ortuno is not entitled to relief on ground two.

### III. CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not

issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Based on the foregoing discussion of Ortuno's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

### IV.  CONCLUSION

For the reasons stated, **IT IS HEREBY RECOMMENDED** that Ortuno's § 2255 motion, [Doc. 164], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO ORDERED AND RECOMMENDED**, this 16th day of February, 2021.

_____
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE